# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

CLERK'S OFFICE
A TRUE COPY
Nov 29, 2023
s/ D. Olszewski
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>(1) the seizure of two [2] cellular phones belonging to Cristian SUAREZ ("SUAREZ") currently in the custody of the Racine Police Department, as described in Attachment A; and (2) the examination of property, and the extraction of electronically stored evidence described in Attachment B. | Case No. 23 MJ 235 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

located in the    Eastern    District of    Wisconsin   , there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(5), | Possession of a Firearm by an Illegal Alien. |
| 18 U.S.C. § 922(a)(1)(A), | Engaging in the Business Without a Federal Firearms License. |
| 18 U.S.C. § 922(a)(6) & 924(a)(1)(A), | False Statement During the Purchase of a Firearm. |
| 21 U.S.C. § 841(a)(1) and 846, | Distributing and Conspiracy to Distribute a Controlled Substance. |

The application is based on these facts:

Please see Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

**BRENDAN MULVEY** Digitally signed by BRENDAN MULVEY
Date: 2023.11.28 15:09:17 -06'00'

*Applicant's signature*

Brendan Mulvey, Special Agent, ATF
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
   telephone    *(specify reliable electronic means)*.

Date: 11/29/2023

*/s/ William E. Duffin*
*Judge's signature*

City and state: Milwaukee, WI    Honorable William E. Duffin, U.S. Magistrate Judge
*Printed name and title*

AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT

I, Brendan Mulvey, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. Your affiant makes this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing (1) the seizure of two [2] cellular phones belonging to Cristian SUAREZ ("SUAREZ") currently in the custody of the Racine Police Department, as described in Attachment A; and (2) the examination of property, and the extraction of electronically stored evidence described in Attachment B.

2. Your affiant is Special Agent in the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) and have been so employed since June 2018. I am presently assigned to the ATF Milwaukee IV Field Office in Milwaukee, Wisconsin. I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516. I was trained as an ATF Special Agent at the Federal Law Enforcement Training Center in Glynco, Georgia.

3. Your affiant has had a variety of formal, informal, and on the job training in the investigation of illegal firearms possession and firearms trafficking. In addition, your affiant has participated in the execution of search warrants in which firearms, ammunition, and controlled substances were seized in violation of state and federal laws. Additionally, your affiant is familiar with street name(s) of firearms, controlled substances, and respective related topics, as well as has knowledge of the use of money laundering to conceal ill-gotten money.

1

4. Based on your affiants training, experience, discussions with other law enforcement agents, and my participation in other investigations involving controlled substances, and firearms, I know that individuals involved with and/or associated to drug and firearms trafficking commonly use cellular telephones to facilitate their drug and firearm trafficking activities. Your affiant is also aware that cellular telephones utilized by drug and firearms traffickers often contain evidence of their criminal activity in various mediums to include text, image/photographs, video/audio recordings, contact lists, call logs, emails, web browser history, location information, etc.

5. This affidavit is made in support of an application for a warrant to search and seize two [2] cell phones, further described in Attachment B. The search will be for evidence and instrumentalities associated with violations of Title 18 U.S.C. § 922(g)(5), Possession of a Firearm by an Illegal Alien, Title 18 U.S.C. § 922(a)(1)(A), Engaging in the Business Without a Federal Firearms License, Title 18 U.S.C. § 922(a)(6) & 924(a)(1)(A), False Statement During the Purchase of a Firearm, Title 21 U.S.C. § 841(a)(1) and 846, Distributing and Conspiracy to Distribute a Controlled Substance as well as other related evidence of criminal wrong doing by ZERTUCHE, SUAREZ, and/or any other known or unknown co-conspirators.

6. The facts in this affidavit come from your affiant's personal observations, training and experience, and information obtained from other investigators and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of the known knowledge about this matter.

7. In preparing this affidavit, your affiant has reviewed copies of official Police Department reports and affidavit(s) prepared by Police Officers of their respective jurisdictions, to include the Milwaukee Police Department and the Racine Police Department, and know that

2

reports and affidavits such as the ones reviewed are prepared in the regular course of official Police Department business. ATF Special Agents have relied upon such reports in the past and found them to be truthful and reliable.

8. Based on training and experience, your affiant uses the following technical terms to convey the following meanings:

- Wireless cell phone: A wireless cell phone (or mobile cell phone, or cellphone) is a handheld wireless device used for voice and data communication through radio signals. These cellphones send signals through networks of transmitter/receivers, enabling communication with other wireless cellphones or traditional "land line" cellphones. A wireless cellphone usually contains a "call log," which records the cellphone number, date, and time of calls made to and from the cellphone. In addition to enabling voice communications, wireless cellphones offer a broad range of capabilities. These capabilities include: storing names and cellphone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless cellphones may also include global positioning system ("GPS") technology for determining the location of the device.
- Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.
- Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

9. Based on your affiant's training, experience, and research, your affiant knows that many cell phones have capabilities that allow them to serve as a wireless/VOIP cellphone, digital

3

camera, GPS navigation device, portable storage, and a tablet. In your affiant's training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## PROBABLE CAUSE

10. Your affiant submits this affidavit in support of a search warrant relating to a Apple I-Phone with a clear case and a black Motorola cell phone with a cracked screen belonging to Cristian SUAREZ (DOB: XX/XX/1999) inventoried under Racine Police Department case number 22-51994 listed as Item No's. 1 & 2, and which property is being kept and maintained at the Racine Police Department, located at 730 Center Street, Racine, WI 53403; that the request for said search warrant is to obtain data including but not limited to, digital pictures, stored telephone numbers, recently called numbers lists, text and multi-media messages, e-mails, digital audio and/or video recordings, settings, deleted files, log files, application usage, internet/web browser history, etc.

11. In preparing this affidavit, your affiant reviewed an official police reports from the Milwaukee Police Departemnt, the Racine Police Department , as well as a previously submitted state search warrant affidavit obatined by an investigator with the Racine Police Department, and that your affiant has utilized reports and affidavits such as these in the past and has known them to be truthful and reliable.

12. In September 2023, the Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF) initiated an investigation into Victor Olegario ZERTUCHE (DOB: XX/XX/1988) ("ZERTUCHE" herein) after learning of a firearm originally purchased by him had been recovered by the Milwaukee Police Department (MPD) from a convicted felon immediately following a battery/shooting incident that occurred on May 29, 2022. The MPD submitted the

4

firearm, which was determined to be an S.C. Nova Grup, S.R.L., model PAK-9, 9mm caliber pistol, bearing serial number RON2025347 ("the PAK-9" herein), for tracing information via the ATF eTrace system in an effort to identify the original purchaser. ATF subsequently determined Victor Olegario ZERTUCHE (XX/XX/1988) to have purchased the PAK-9 on March 13, 2022, from Federal Firearms Licensee (FFL) Dam Road Gun Shop Inc., located at N4596 Dam Rd., Delavan, WI 53115. ATF determined the firearms time-to-recovery (TTR) to be 77-days.

13. Also, as part of this investigation, the PAK-9 was test fired and its casings collected and analyzed via the National Integrated Ballistics Information Network (NIBIN) to determine whether the casings correlate with any previous shooting incidents. Upon doing so, ATF determined the PAK-9 to correlate to a shooting that occurred in the city and county of Milwaukee on April 3, 2022. ATF determined the firearms time-to-crime (TTC) to be 21-days. It is important to note that "TTC" indicates the amount of time between the initial purchase of a firearm and its identified usage during the commission of a crime. Similarly, "TTR" indicates the amount of time between the firearms original purchase and its inevitable recovery by law enforcement. Your affiant is aware from training, knowledge, and experience that a short TTC/TTR is often an indicator of firearms trafficking/straw purchasing, and often serves as an investigative lead. Furthermore, your affiant is also aware that firearms recovered while in the possession of convicted felons and other individuals prohibited from purchasing/possessing firearms is also an indicator of firearms trafficking/straw purchasing as these individuals would have procure the firearm through alternative and often illicit means, such as through a "straw purchaser".

14. Your affiant then began to investigate additional traces/recoveries involving ZERTUCHE. Upon doing so, your affiant identified ZERTUCHE to be associated to the trace of

5

a Glock, model 48, 9mm caliber pistol, bearing serial number BUFN419 ("the Glock" herein), recovered by the Racine Police Department in the possession of Cristian A. SUAREZ (DOB: XX/XX/1999), an alleged illegal Mexican immigrant, on December 16, 2022. According to the trace, ZERTUCHE purchased the Glock on March 19, 2022, from FFL Dam Road Gun Shop. ATF determined the firearms TTC/TTR to be 272-days. Furthermore, your affiant is aware that illegal immigrants are prohibited from possessing/purchasing firearms.

15. As part of this investigation, your affiant obtained and reviewed documents associated to the recovery of the Glock/arrest of SUAREZ from the RPD. According to the documents, the RPD initiated an investigation in October 2022, regarding suspected cocaine trafficking being committed by SUAREZ and his associates in Racine, WI. RPD developed intelligence from two independent and reliable confidential sources of information who identified SUAREZ as a large-scale supplier of cocaine within the city of Racine. The RPD then obtained a search warrant for SUAREZ's residence located at 1336 Terrace Ave., Racine, WI 53403, as well as his person and vehicle, described as a 2019 Chevrolet Impala bearing Wisconsin registration AKR6696 ("the suspect vehicle" herein), and any other vehicles parked on the curtilage or on the street and associated with the residence. The search warrant was authorized on December 15, 2022, by the Honorable Judge Faye Flancher.

16. On December 16, 2022, investigators from the RPD established a surveillance position at 1336 Terrance Ave. in anticipation of the search warrant execution. At approximately 1524 hours, investigators observed a male they recognized as SUAREZ exit the residence with a female carrying a baby carrier and enter the suspect vehicle, which was parked on the street in front of the residence. The vehicle then began to depart northbound.

17. The RPD then conducted a traffic stop of the vehicle near the intersection of S. Memorial Dr. and Ninth St. and identified SUAREZ as the vehicle operator. SUAREZ was then detained and while searching his person he was observed to be in possession of two functioning cell phones. The cell phones are described as a Apple iPhone cellular telephone with a clear case, which was located in SUAREZ's hand at the time of recovery, and a black Motorola cellular telephone with a cracked screen, which was located inside SUAREZ's pocket.

18. Following the traffic stop, RPD officers then approached and surrounded 1336 Terrace Ave. and began a "knock and announce" procedure, identifying themselves as law enforcement and articulating that they possessed a search warrant. The door was then answer by XXXXX XXXXXXXX (DOB: XX/XX/XXXX), who was then advised of the search warrant and officers then began clearing the residence for additional occupants. Once the residence was deemed clear, investigators initiated the search.

19. While searching a trailer located in the backyard of the residence, officers located a wooden triangle shaped compartment with a hinged lid built into the tongue of the trailer. Located inside the compartment was a green in color tied-up grocery bag which contained a box of unused clear sandwich bags, a water bottle stuffed with clear sandwich bags with the corners missing, a digital gram scale with white residue, and a clear baggie of suspected cocaine which later field-tested positive for cocaine and fentanyl and weighed approximately 10.1 grams. Your affiant is aware from training, knowledge, and experience regarding narcotics investigations that drug traffickers utilize digital scales in order to weigh their product prior to distribution. Your affiant is also aware that narcotics traffickers often package their product by parceling the narcotics into the corner of a plastic bag. The corner of the bag containing the narcotics is then twisted and torn or burned in order to keep the narcotics from falling out. At times narcotics

7

dealers will also tear off pieces of the plastic bag and then the bindle is created by twisting and tying or burning the end of the plastic. Your affiant recognized the items recovered to be indicative of narcotics trafficking.

20. Located inside the top drawer of a dresser inside the upstairs East bedroom were twenty-eight [28] $100 dollar bills, totaling $2,800.00 USC, in a small box.

21. Investigators determined the upstairs south-central bedroom to belong to SUAREZ. While searching the bedroom closet, officers located the aforementioned Glock handgun on top of a shelf. The report indicates SUAREZ later admitted to holding the Glock for a friend but refused to identify who. Also located inside the upper left drawer of the dresser inside the south-central bedroom was a single knotted bag of suspected marijuana. The marijuana was subsequently weighed and field tested which resulted in a gross weight of approximately 7.0 grams, as well as a presumptive positive result for the presence of THC.

22. In obtaining these documents, your affiant spoke with RPD Inv. Donald Nuttall who stated that SUAREZ is an illegal Mexican immigrant. Inv. Nuttall also stated that SUAREZ and ZERTUCHE were known members/affiliates of the Latin Kings Armed Drug Trafficking Organization (ADTO). Inv. Nuttall also stated that no-follow up investigation was ever conducted regarding ZERTUCHE.

23. As part of this investigation, your affiant requested an offline National Crime Inforation Center (NCIC) inquiry be performed on ZERTUCHE in an effort to identify any background checks that may have been completed as part of a firearm purchase from a Federally licensed dealer. In doing so, ATF identified ZERTUCHE to have been the subject of fourteen [14] inquirees made by the Wisconsin Department of Justice Crime Information Bureau Firearms Terminal Madison between November 25, 2017, and November 16, 2022.

24. To date, ATF has accounted for five [5] purchases in which twelve [12] firearms were acquired by ZERTUCHE from Dam Road Gun Shop between March 13, 2022, and June 5, 2022. Those transactions are detailed below (Previously identified firearms are italicized):

- **March 13, 2022:** [1] Charles Daly, model PAK-9, 9mm caliber pistol, bearing serial number RON2025138

    [2] Diamondback, model DB-15, .223 caliber rifle, bearing serial number DB2499305

    [3] Sig Sauer, model 320-M17, 9mm caliber pistol, bearing serial number M17A038140

- **March 17, 2022:** [1] Diamondback, model DB-15, .223 caliber rifle, bearing serial number DB2900230

    [2] Smith & Wesson, model M&P 15, .223 caliber pistol, bearing serial number TT15475

    [3] Smith & Wesson, model M&P 15-22, .22 caliber pistol, bearing serial number WAA9945

    [4] Sig Sauer, model P320-9-M17-MS, 9mm caliber pistol, bearing serial number TC041392

    *[5] Charles Daly, model PAK-9, 9mm caliber pistol, bearing serial number RON2025347*

- **March 19, 2022:** *[1] Glock, model G48, 9mm caliber pistol, bearing serial number BUFN419*

- **March 20, 2022:** [1] Beretta, model Bobcat, .22 caliber pistol, bearing serial number DAA607068

9

- **June 5, 2022:** [1] Charles Daly, model PAK-9, 9mm caliber pistol, bearing serial number RON2025175

    [2] Glock, model 19X, 9mm caliber pistol, bearing serial number BXGY810

25. While completing the ATF Form 4473 during the identified purchases/transfers, your affiant observed ZERTUCHE to mark "yes" when answering question 21. a. located in Section B on the form which asks, "Are you the actual transferee/buyer of the firearm(s) listed on this form?" The question also warns the purchaser in bold lettering that they are not the actual transferee/buyer if they are acquiring the firearm(s) on behalf of another person. Your affiant also observed ZERTUCHE to answer "No" when answering all additional questions regarding whether various prohibiting factors of firearm possession apply to him.

26. Your affiant also observed ZERTUCHE to have signed each form, certifying that the information provided was true, correct, and complete. Also, by signing, ZERTUCHE declared that he read and understood the Notices, Instructions, and Definitions on the ATF Form 4473, and that falsely answering "yes" to Section B, question 21. a., while not actually being the true/actual transferee/buyer is a crime punishable as a felony under Federal law, and may also violate State and/or local law. Furthermore, ZERTUCHE understood that making any false oral or written statement, or exhibiting any false or misrepresented identification with respect to the transactions, is a crime punishable as a felony under Federal law, and may also violate state and/or local law. Lastly, ZERTUCHE understood that "the repetitive purchase of firearms for the purpose of resale for livelihood and profit without a Federal firearms license is a violation of Federal law."

10

27. Your affiant also observed ZERTUCHE to have signed each form, certifying that the information provided was true, correct, and complete. Also, by signing, ZERTUCHE declared that he read and understood the Notices, Instructions, and Definitions on the ATF Form 4473, and that falsely answering "yes" to Section B, question 21. a., while not actually being the true/actual transferee/buyer is a crime punishable as a felony under Federal law, and may also violate State and/or local law. Furthermore, ZERTUCHE understood that making any false oral or written statement, or exhibiting any false or misrepresented identification with respect to the transactions, is a crime punishable as a felony under Federal law, and may also violate state and/or local law. Lastly, ZERTUCHE understood that "the repetitive purchase of firearms for the purpose of resale for livelihood and profit without a Federal firearms license is a violation of Federal law."

28. It is important to note that at ATF intitiated the investigation involving ZERTUCHE and SUAREZ in approximately September 2023, and learned of the evidence recovered during Racine's previous investigation of SUAREZ in approximately October 2023. It is for this reason that your affiant is now requesting a search warrant be authorized for SUAREZ's devices.

# ATTACHMENT A

PROPERTY TO BE SEARCHED

29. The property to be searched are two [2] mobile devices belonging to SUAREZ currently in the possession of the Racine Police Department.

This warrant authorizes the forensic examination of the mobile cellular devices for the limited purpose of determining whether the devices were utilized in furtherance of criminal activity as set forth in Section I of Attachment B.

1

## ATTACHMENT B

ITEMS TO BE SEIZED

Section I:

Two [2] mobile devices currently in the custody of the Racine Police Department and inventoried under case number 22-51994, and assigned Item numbers 1 & 2, further desciberd as Item #1: a locked Apple iPhone touch screen cell phone with a clear case, and Item #2: a locked black in color Motorolla cellular telephone with a cracked screen., for the purpose of analyzing the devices for electronucally stored information.

Section II:

Upon identifying these devices, records and information from each device relating to violations of Title 18, United States Code, Sections 922(g)(5), 922(a)(1)(A), 922(a)(6) & 924(a)(1)(A), as well as violations of Title 21, United States Code, Sections 841(a)(1) and 846 involving SUAREZ and ZERTUCHE , shall be analyzed to include:

   a. Records and information relating to the acquisition, sale, storage, transport, or transfer of firearms, ammunition, and illegal narcotics by SUAREZ and/or ZERTUCHE, or by persons in communication with SUAREZ, including types, amounts, and prices of firearms or ammunition, as well as dates, places, and amounts of specific transactions;

   b. Records and information reflecting communication between SUAREZ and ZERTUCHE, and any person relating to firearms, ammuntion, or narcotics, whether by voice, text, instant message, email, or any other form of electronic communication;

   c. Records and information reflecting the state of mind of SUAREZ and/or ZERTUCHE at times pertinent to the investigation;

2

d. Images, photographs, video, or other media files pertaining to the acquisition, sale, storage, transport, or transfer of firearms, ammunition, or narcotics;

e. Any stored communications, digital depictions, to include pictures and video recordings, indicating the possession and sale/transfer of firearms, ammunition, or narcotics;

f. Records and information relating to receipts, logs, inventories, and other documentation relating to the purchase, sale, storage, transport, or transfer of firearms or ammuntion;

g. Evidence of user attribution showing who used or owned the mobile cellular devices descirbed in this affidavit at the time things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

h. Any stored GPS location tracking/logging files that may provide additional evidence as to the targets' travels, and may provide evidence as to the location where the alleged illegal actions occurred;

i. Records and information relating to bank records, checks, credit card bills, account information, and other financial records of financial activity pertaining to firearms or ammuntion;

j. Records and information relating to internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that a user entered into any internet search engine, and records of user-typed web addresses.

3

As used above, the terms "records" and "information" include all the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.